Case 4:17-cv-03339 Document 46 Filed on 05/07/19 in TXSD Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
May 09, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLAUDIA HOLLIE, ET AL., § | |
| § | |
| Plaintiffs, § | |
| § | |
| V. § | CIVIL ACTION NO. 17-3339 |
| § | |
| CITY OF BRYAN, ET AL, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION**

Pending is Defendants City of Bryan, Texas and Officer Dustin Seelig's Re-instated Motion to Dismiss or in the Alternative Motion for Summary Judgment and Motion to Stay Discovery (Document No. 41). Having considered that motion as a motion for summary judgment, which the parties were advised of in an Order entered on April 3, 2019 (Document No. 40), the claims and allegations in this case as against Defendants City of Bryan, Texas and Officer Dustin Seelig, the additional briefing (Document No. 42), the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion for Summary Judgment (Document No. 41) be GRANTED and Plaintiffs' claims against Defendants City of Bryan, Texas and Officer Dustin Seelig be DISMISSED WITH PREJUDICE.

**I.      Background**

This is a civil rights case brought pursuant to 42 U.S.C. § 1983 by family members of Johnny Hall, who died of a cocaine overdose after being taken by Defendant Officer Dustin Seelig ("Seelig") to the Brazos County Detention Center. According to the allegations in Plaintiffs' Original

Complaint,[1] Seelig

> saw Johnny Hall throw a baggie out his car window. The baggie had trace amounts of cocaine in it. Johnny had swallowed the cocaine – a very common suspect tactic, well known to all police. Also, well known to all police is that cocaine ingestion can be fatal. Officer Seelig arrested Johnny Hall for tampering with evidence and cocaine possession and took Johnny into custody. In the back seat of the squad car Johnny was sweating profusely, his eyes were dilated, and he was barely able to speak. Officer Seelig did not call an ambulance or take Johnny to an emergency room, he took Johnny to the Brazos County jail.
>
> While in jail booking Johnny repeatedly asked for medical attention over the intercom system. It was clear that he was suffering from extreme physical pain related to his cocaine overdose – Johnny was dying. In response to his cries for help and medical aid, Johnny was continually told by Brazos County jail employees to "stay off the button" which refers to the button on the intercom system.
>
> Johnny Hall died of a cocaine overdose.

Complaint (Document No. 1) at 1-2.

Plaintiffs have asserted a § 1983 claim against Defendant Seelig in his individual and official capacities, alleging that Seelig "under color of law as an agent and employee of Defendant, Bryan Police Department and the City of Bryan," "had reason to believe that Mr. Hall had ingested cocaine and was suffering from a cocaine overdose," but did not afford or provide him with medical treatment. Complaint (Document No. 1) at 6. As for Plaintiffs' § 1983 claim against Defendant City of Bryan, Bryan Police Department, Plaintiffs allege that it is "liable for the constitutional torts of Officer Seelig" and that it

> sanctioned the following customs, practices and policies:
>
> a. Denying medical treatment to dying persons;
>
> b. Failing to discipline Officers found to have been denied medical treatment to persons in need of medical attention;

---

[1] Plaintiffs were given leave to file an amended complaint, but did not do so.

2

    c.       Failing to adequately supervise and/or train its officers;

    d.       Ignoring the serious need for training and supervision of its officers in regards to ensuring persons under their care receive necessary medical treatment.

Complaint (Document No. 1) at 7.

With their Motion to Dismiss, or alternative Motion for Summary Judgment, Defendants City of Bryan and Officer Seelig argue that Plaintiffs have not stated a viable claim under the Eighth Amendment given that the decedent, Johnny Hall, was a pre-trial detainee,[2] that there are no allegations and no evidence of a custom, policy or practice upon which liability of Defendant City of Bryan could be based, and that there are no allegations, and no evidence that could overcome Defendant Seelig's claim of qualified immunity.[3] Following the filing of Defendants' motion, Plaintiffs were given an opportunity to file an Amended Complaint. They did not do so, and, consequently, Defendants' motion was re-instated ***and all parties were provided notice that the motion could be considered as a motion for summary judgment***. *See* Order of April 3,, 2019 (Document No. 40). Plaintiff was subsequently given additional time to file a response to Defendants' motion, and Plaintiff's response was filed on May 6, 2019. Two things are important about that response. First, Plaintiffs state that they will "file for leave to amend their Original Complaint within seven (7) days of their filing of [their] response." Response (Document No. 45

---

[2] As argued by Defendants, pretrial detainees' rights arise under the Fourteenth Amendment, *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"), not the Eighth Amendment, as has been alleged by Plaintiffs in their Complaint.

[3] While Defendants City of Bryan and Officer Seelig also seek dismissal of Plaintiffs' state law claims on government immunity grounds, Plaintiffs' Complaint does not contain any state law claims, and such claims will not be presumed to have been asserted.

at 5). Second, Plaintiffs state that they are "entitled to 20 days to respond to a Motion for Summary Judgment. Should Defendants' motion be heard, in the alternative, as a Motion for Summary Judgment, Plaintiffs request the full 20 days to respond to said motion." (Document No. 45 at 6-7).

The record clearly shows that Plaintiffs were already given an opportunity to amend, but completely failed to do so. The record also shows that Plaintiffs were advised in the Order of April 3, 2019, that Defendants' motion could be considered as a motion for summary judgment. Given Plaintiffs failure to file an amended complaint when they were allowed to do so, coupled with Plaintiffs' failure to respond to Defendants' motion as a motion for summary judgment despite being advised that it could be so considered and despite being given additional time to do so, Defendants' motion can, and will, be considered as a Motion for Summary Judgment. Given the age of this case, the time that Defendants' motion was pending prior to the Order allowing Plaintiffs to amend (which they did not do), as well as the latitude already provided Plaintiffs to respond to Defendants' motion *as a motion for summary judgment*, Plaintiffs are not entitled to any additional time to respond to that motion nor are Plaintiffs entitled to a continuance of that motion under FED. R. CIV. P. 56(d).[4]

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of

---

[4] Plaintiffs' Objections to the exhibits and evidence submitted by Defendants with their motion on the basis that only the allegations in the Complaint are to be considered under Fed. R. Civ. P. 12(b)(6), *see* Document No. 45 at 7, are OVERRULED. The Order filed on April 3, 2019, advised the parties that Defendants' re-instated motion "could, and may, be considered and ruled upon as a motion for summary judgment under Fed. R. Civ. P. 56." (Document No. 40).

4

a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[5] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

---

[5] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

**III. Discussion**

Section 1983 of Title 42 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989), *cert. denied*, 493 U.S.1019 (1990). To state a claim under § 1983, plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Bass v. Parkwwod Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). "Because the Fourteenth Amendment protects liberty and property interests only against invasion by the state, a Section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury." *Id.*

**A. City of Bryan, Texas**

Municipalities and other local governmental bodies are "persons" within the meaning of § 1983 that may be sued directly under 42 U.S.C. § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *see also Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). In addition, a municipality may be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436

6

U.S. at 690-91; *see also Languirand*, 717 F.2d at 223.

> An "official policy" needed to establish municipal liability under § 1983 is defined as:
>
> a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson*, 958 F.2d at 94; *See also Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476 (1985). While policies that are themselves facially unconstitutional will support liability under § 1983, "facially innocuous" policies can also "support liability if [they were] promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).[6]

Here, there is both a paucity of allegations, and absolutely no summary judgment evidence, to support Plaintiffs' municipal liability claims against Defendant City of Bryan, Texas. While Plaintiffs allege, conclusorily in their Complaint, that the City of Bryan sanctioned "customs, practices and policies" which had the effect of "[d]enying medical treatment to dying persons," "[f]ailing to discipline officers and/or employees found to have denied medical treatment to persons in need of medical attention," "[f]ailing to adequately supervise and/or train its officers," and

---

[6] In addition to identifying and offering proof of a municipal policy, a plaintiff must establish a "direct causal link between the municipal policy and the constitutional deprivation. *Monell* describes the high threshold of proof by stating that the policy must be the '"moving force' behind the violation." *Piotrowski*, 237 F.3d at 580.

"[i]gnoring the serious need for training and supervision of its officers in regards to ensuring persons under their care receive necessary medical treatment," Complaint (Document No. 1) at 7, there are no facts to support any of these allegations. Moreover, there is no summary judgment evidence, whatsoever, to support Plaintiffs' conclusory policy, practice and custom allegations. In the absence of some summary judgment evidence that would support, or raise a genuine issue of material fact, on the existence of either a facially unconstitutional City of Bryan policy, practice or custom, or a facially innocuous policy, custom or practice that was promulgated by the City of Bryan with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result, Defendant City of Bryan is entitled to summary judgment on Plaintiffs' § 1983 claim(s).

### B.    Defendant Seelig

The doctrine of qualified immunity is available to an individual public official as an affirmative defense to a claim brought under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 US. 800, 818, 102 S.Ct. 2727, 2738 (1982). In general, qualified immunity is available for public employees and officers whose duties require the exercise of discretion. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987), and whose acts fall within the scope of their discretionary authority. *Brooks v. George County, Miss.*, 84 F.3d 157, 164 (5th Cir.), *cert denied*, 519 U.S. 948 (1996). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Behrens v. Pelletier,* 516 U.S. 299, 305-06, 116 S.Ct. 834, 838 (1996). If the statutory or constitutional law is clearly established, however, claims of qualified immunity seldom prevail because a reasonably competent public official should know the law governing his conduct.

*Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738-39.

A dual analysis is applied to qualified immunity defenses. First, it must be determined whether the Plaintiff has "alleged the violation of a clearly established constitutional right." *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993) (quoting *Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991)). This is determined by viewing the allegations and evidence in the light of the currently applicable constitutional standards. *Id*. at 106. Second, it must be determined whether the conduct of the public official was objectively reasonable. "'[T]he objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question.'" *Id*. at 108. (quoting *Mouille v. City of Live Oak*, 918 F.2d 548, 551 (5th Cir. 1990)); *Mendenhall v. Riser*, 213 F.3d 226, 230, (5th Cir. 2000), *pet. cert. filed*, September 28, 2000. ("Qualified immunity protects against novel theories of statutory or Constitutional injury–any purported harm must stem from rights clearly established under law at the time of the incident, and the contours of that right must be sufficiently clear such that a reasonable officer would understand that his actions were violative of the right at issue."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Malley v. Briggs*, 457 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)).

Here, Plaintiffs' § 1983 claim(s) against Defendant Seelig fail under both aspects of the dual qualified immunity analysis. While the Fourteenth Amendment does guarantee "pretrial detainees a right to 'not have their serious medical needs met with deliberate indifference'" *Trevino v. Hinz*, 751 F.App'x 551, 553 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty., Texas*, 245 F.3d 447, 457 (5th Cir. 2001), "an officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference." *Trevino*, 751 F.App'x at 555. Here, the

9

summary judgment evidence submitted by Defendants, which has not been controverted by Plaintiffs in any way, negates any claim by Plaintiffs that Officer Seelig violated the decedent's Fourteenth Amendment right to medical attention. The summary judgment evidence shows that:

> Officer Seelig observed the decedent disregard a stop sign
>
> Officer Seelig activated his lights and bumped his siren in attempt to get the decedent to stop
>
> The decedent initially refused to stop, and during that period Officer Seelig observed the decedent throw a plastic baggie from the car
>
> The decedent eventually stopped. When asked by Officer Seelig what he had thrown out of the car, the decedent stated that he had not thrown anything out of the car
>
> Following a pat-down search, the decedent was placed in the back seat of Officer Seelig's patrol car
>
> Other officers searched for and retrieved the plastic bag upon Officer Seelig's directions of where to look. The retrieved plastic bag had trace amounts of a white powdery substance, and smelled of fresh cocaine
>
> Officer Seelig checked the decedent's mouth to see if he was somehow hiding, or had consumed, the contents of the plastic bag. Officer Seelig "did not seek any sign [the decedent] consumed anything"
>
> Officer Vela observed Officer Seelig check the decedent's mouth "to make sure he did not swallow or have illegal contents hidden. Nothing out of the ordinary was found in [the decedent's] mouth"
>
> During Officer Seelig's investigation, and while the decedent was detained in the back seat of Officer Seelig's car, the decedent "did not show signs of intoxication or illegal drug use. [He] was calm, cooperative and acted normal" when Officer Seelig spoke to him

*See* Police Report and Probable Cause Statements (Document No. 15-1 at 5-13).[7] This

---

[7] The body and dash camera footage submitted by Defendants is consistent with the contents of the Police Report and Probable Cause Statements. Exhibit 3 and Exhibit 4 to Defendants' Motion (Document No. 15). In particular, nothing in that footage would have put Officer Seelig on notice that the decedent needed medical attention of any kind. The decedent

uncontroverted summary judgment evidence does not show, or suggest, that the decedent, Johnny Hall, exhibited any signed of having ingested cocaine, or that he was, at any time prior to his arrival and booking into the Brazos County Detention Center, in need of medical attention, or that he had any symptoms that would *clearly* and *unambiguously* indicate to Officer Seelig that he was suffering a medical emergency. Upon this summary judgment record, there is, quite simply, no summary judgment evidence that Johnny Hall was in need of medical attention while in Officer Seelig's custody, that Officer Seelig knew Johnny Hall was in need of medical attention while in his custody, or that Officer Seelig acted unreasonably in any way. Because Plaintiffs have offered no evidence to counter Officer Seelig's qualified immunity defense, *see Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 351 (5th Cir. 2012) ("Once a defendant raises the defense of qualified immunity it becomes the plaintiffs' burden to show that it does not apply."), Seelig is entitled to summary judgment on that qualified immunity defense and the dismissal of the § 1983 claim(s) Plaintiffs have asserted against him.

## IV.   Conclusion and Recommendation

Based on the foregoing and the conclusion that there is no summary judgment evidence of a policy, custom or practice upon which to base any liability under § 1983 as against Defendant City of Bryan, Texas, and no summary judgment evidence to counter Defendant Seelig's qualified immunity defense, the Magistrate Judge RECOMMENDS that Defendants City of Bryan, Texas and Officer Dustin Seelig's Re-instated Motion for Summary Judgment (Document No. 41) be GRANTED, and that Plaintiffs' claims against Defendants City of Bryan, Texas and Officer Dustin

---

was responsive, cooperative and lucid.

11

Seelig be DISMISSED with PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, this 7th day of May, 2019.

Frances H. Stacy
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE